**THE LAW OFFICES OF JACOB ARONAUER**
Jacob Aronauer (JA 9184)
225 Broadway, Suite 307
New York, NY 10007
(212) 323-6980
jaronauer@aronauerlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARION BRASKY,

                                 Plaintiff,

      -against-

NEW OPHTHALMIC NETWORK
OF EXCELLENCE, LLC d/b/a
MID MANHATTAN SURGI-CENTER
and DAVID HAY, RICHARD KOPLIN,
HARRY KOSTER, ALAN JORDAN,
HARVEY ROSENBLUM
and TAMI AHMED, individually,

                               Defendants.

**COMPLAINT**

**Plaintiff Demands a Jury Trial**

**ECF Case**

       Plaintiff Marion Brasky (referred to herein as "Plaintiff" or "Brasky"), by and through her counsel, The Law Offices of Jacob Aronauer, allege:

<u>**NATURE OF THE ACTION**</u>

1.   Plaintiff brings this action to remedy discrimination on the basis of race, religion, age and retaliation for her opposition to unlawful practices in violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"); the New York State Human Rights Law, N.Y.  Exec. Law § 296 et seq. ("NYSHRL"); and the Administrative Code of the City of New York § 8-107 et seq. ("NYCHRL").

2.   Plaintiff also brings this action to remedy wage and hour violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") at the New Ophthalmic

Network of Excellence, LLC doing business as the Mid Manhattan Surgi-Center (the "Surgi-Center").

3. For over 15 years, Marion Brasky was a well-respected and dedicated nurse at the Surgi-Center. Plaintiff's employment abruptly ended when one of her immediate supervisors, Tami Ahmed, refused to permit Plaintiff to leave work early so as to observe Passover with her loved ones.

4. Tami Ahmed refused Plaintiff's request to observe Passover despite the fact that Plaintiff sought this religious accommodation more than 4 months in advance. Plaintiff, the only full-time nurse at the Surgi-Center who was Jewish, was then terminated in retaliation for refusing to accept Defendants' religious discriminatory practices.

5. In addition, Plaintiff was a victim of age discrimination by Defendants. Specifically, Ahmed created a hostile work environment against Plaintiff by repeatedly referring to her as "old" and often making negative, belittling comments about her age in front of her colleagues.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 28 U.S.C. § 1331; 29 U.S.C. §§ 216(b)(c) and 217; and 28 U.S.C. § 1337.

7. This Court has supplemental jurisdiction over the New York State and New York City Law Claims under the principles of pendent and ancillary jurisdiction.

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(c), because all or a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

### Plaintiff

9.  Plaintiff was born Marion Tager and is Jewish.

10. As of November 2014, Plaintiff resides primarily in New York, New York.

11. Plaintiff observes the major Jewish holidays including Passover, Yom Kippur and Rosh Hashanah.

12. Plaintiff has an elementary understanding of the Yiddish language and utilized it in her job at the Surgi-Center when interacting with patients.

13. Plaintiff worked at the Surgi-Center from January 29, 2001 until her unlawful termination on April 22, 2016.

14. Plaintiff was a covered employee within the meaning of the FLSA and NYLL.

### Defendants

### The New Ophthalmic Network of Excellence, LLC

15. The New Ophthalmic Network of Excellence, LLC is a domestic limited liability company with its principal place of business at 61 W. 23rd St #7, New York, NY 10010.

16. On information and belief, the New Ophthalmic Network of Excellence, LLC is doing business as the Mid Manhattan Surgi-Center.

17. At all times relevant to this action, the New Ophthalmic Network of Excellence, LLC was an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

18. The New Ophthalmic Network of Excellence, LLC has: (1) employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) an annual gross volume of sales in excess of $500,000.00.

**David Hay**

19. Defendant David Hay ("Hay") is engaged in business in New York County, who is sued individually and in his capacity as CEO of the Surgi-Center.

20. On information and belief, Hay has an ownership interest in the Surgi-Center.

21. On information and belief, for over ten years, Hay has maintained control, oversight and the direction of the Surgi-Center.

**Dr. Richard Koplin**

22. Defendant Richard Koplin ("Koplin") is engaged in business in New York County.

23. Koplin is a doctor at the Surgi-Center and also has an ownership interest in the Surgi-Center.

**Dr. Harry Koster**

24. Defendant Harry Koster ("Koster") is engaged in business in New York County.

25. Koster is a doctor at the Surgi-Center and also has an ownership interest in the Surgi-Center.

**Dr. Alan Jordan**

26. Defendant Alan Jordan ("Jordan") is engaged in business in New York County.

27. Jordan is a doctor at the Surgi-Center and also has an ownership interest in the Surgi-Center.

**Dr. Harvey Rosenblum**

28. Defendant Harvey Rosenblum ("Rosenblum") is engaged in business in New York County.

29. Rosenblum is a doctor at the Surgi-Center and also has an ownership interest in the Surgi-Center.

**Tami Ahmed**

30. On information and belief, Tami Ahmed ("Ahmed") resides in Brooklyn, New York.

31. Approximately three years ago, Ahmed was hired at the Surgi-Center in the title role of administrator.

32. Ahmed was one of Plaintiff's immediate supervisors.

33. On information and belief, Ahmed is still employed at the Surgi-Center as an administrator.

## PLAINTIFF'S FACTUAL ALLEGATIONS

**The Surgi-Center**

34. The Surgi-Center, headed by CEO David Hay, is a single specialty ophthalmic surgery center that performs approximately 450 cases per month.   Cases include cataract procedures, glaucoma procedures, corneal transplants and minor ocular plastics.

35. The Surgi-Center has approximately 20 employees.

36. The Surgi-Center has approximately 5 full-time staff nurses and also has per diem nurses.

37. As CEO of the Mid Manhattan Surgi-Center, Hay controlled and dictated Plaintiff's rate of pay as well as Plaintiff's work schedule.

38. As a staff nurse, Plaintiff directly reported to both Winda Atmajaya ("Atmajaya") and Ahmed.

39. Atmajaya was initially hired as a staff nurse at the Surgi-Center.  Approximately three years ago, Atmajaya was promoted to nurse supervisor.

40. As an administrator, Ahmed controlled and dictated Plaintiff's rate of pay, subject to Hay's approval, as well as Plaintiff's work schedule.

41. Both Ahmed and Atmajaya acted as managers with respect to the nurses on staff at the Surgi-Center.

**Ages of Relevant Employees at the Surgi-Center**

42. On information and belief, Atmajaya is approximately 30 years old.

43. On information and belief, Ahmed is approximately 40 years old.

44. At the time Plaintiff was terminated by the Surgi-Center, she was 63 years old.

45. On information and belief, at the time of Plaintiff's termination, there was only one other nurse employed (on a per diem basis) who was older than 40. All other staff nurses were in their 20's and 30's.

46. In addition, on information and belief, approximately the last (4) nurses hired by the Surgi-Center were in their 20's.

47. On information and belief, the nurse who replaced Plaintiff was also only in her 20's.

**Marion Brasky's Employment**
**at the Mid-Manhattan Surgi-Center**

48.  As previously mentioned, Plaintiff was employed at the Surgi-Center from January 29, 2001 until April 22, 2016.

49. Plaintiff was initially hired as a staff nurse.

50. Approximately one year after Plaintiff was hired at the Surgi-Center, she interviewed with the nursing administrator Linda O'Hanlon for the head nurse position in the pre-operative suite.

51. Based upon her interview, strong work product and overall qualifications, Ms. O'Hanlon offered the head nursing position in the pre-operative area to Plaintiff.

52. Plaintiff accepted Ms. O'Hanlon's offer of the head nursing position.

53. From approximately January 2002 until approximately June 2003, Plaintiff was the head nurse of the pre-operative suite.

54. Plaintiff is a breast cancer survivor.  In June 2003, Plaintiff was diagnosed with breast cancer for the second time.

55. As a result of being diagnosed with breast cancer for the second time, Plaintiff had to undergo a mastectomy at Memorial Sloane Kettering Hospital.

56. Plaintiff returned to the Surgi-Center after cancer surgery.

57. The nursing administrator at that time was Teresa Zacholl.

58. Zacholl, acting on behalf of the Surgi-Center and with the approval of Hay, offered Plaintiff the opportunity to work 4 days a week instead of the standard 5-day work week.

59. In addition, Zacholl also offered Plaintiff the same 4-day work week at the same hourly rate that she was paid as a head nurse.

60. The Surgi-Center administration and Plaintiff agreed that, unless there was an emergency, Plaintiff would only be required to work 4 days a week as an accommodation to Plaintiff.

61. In addition, as a further accommodation to Brasky, it was agreed that she would only work in the pre-operating area.  Plaintiff also returned to her role as staff nurse.

62. Plaintiff's job duties as a staff nurse included, but were not limited to, greeting the patient in the waiting room and gathering information with respect to the patient's case histories. Plaintiff prepared the patient for surgery, including administering an intravenous catheter and coordinating with the anesthesiologist.

63. After the patient completed surgery, Plaintiff would check the patient's vital signs and alertness level, and review post-op instructions with the patient and inform the patient of scheduled follow-up appointments with the doctor.

64.  Plaintiff routinely spoke Yiddish with many of the Jewish and Russian patients to comfort them in the pre-op and post-op areas.

65.  On information and belief, Ahmed and Atmajaya were aware of the fact that Plaintiff spoke Yiddish with patients.

66.  During the 15 years that Plaintiff worked at the Surgi-Center, Plaintiff received several commendations as "employee of the month."  Specifically, Plaintiff received 4 nurse-of-the-month citations.

**Plaintiff's Work Schedule**
**and Salary at the Surgi-Center**

67.  As previously stated, after Plaintiff underwent a mastectomy, it was agreed that as an accommodation to Plaintiff after she had cancer, she would work only 4 days a week.

68.  Plaintiff was primarily scheduled to begin work between 6:00 a.m. and 6:30 a.m. and would also, but less frequently, start shifts at approximately 7:00 a.m.  As discussed below, though, Plaintiff virtually always began work prior to her scheduled shift time.

69.  While Plaintiff was normally scheduled to work 4 days a week, she did not receive a set schedule of hours per week or month.  Each week was unique in that the workload, start and completion times were entirely dependent upon the number of surgical cases scheduled.

70.  Throughout Plaintiff's employment at the Surgi-Center, she was paid hourly.

71.  When Plaintiff was initially hired at the Surgi-Center, she was paid $27.00 per hour.

72.  At the time Plaintiff concluded employment at the Surgi-Center, she was being paid $38.75 per hour.

73.  Due to Plaintiff's work schedule, there were would be times when Plaintiff would work 12-hour days due to a high patient volume at the Surgi-Center.

74. Prior to Brasky moving to Manhattan in approximately November 2014, she would arrive to work at approximately 5:25 am.

75. After Brasky moved to Manhattan in November 2014 with her husband, Bruce Brasky, she would arrive to work closer to 4:10 a.m.

76. When Plaintiff arrived prior to her scheduled shift time, she would engage in essential pre-shift job duties to ensure that everything was in order when the patients arrived (patients usually began arriving at the Surgi-Center at approximately 6:00).

77. Both Ahmed and Atmajaya were aware that Plaintiff arrived at work prior to her official start time and performed work on behalf of the Surgi-Center.

78. In fact, Ahmed told Plaintiff that if she chose to come in early to work on behalf of the Surgi-Center, that she would not be paid.

79. While Ahmed would not authorize payment to Brasky for this additional work, she had no problem assigning Plaintiff specific tasks for her to perform before the start of her scheduled shift.

80. For example, Ahmed told Plaintiff that before she started her official shift she should turn on the office's computers.  As directed by Ahmed, Plaintiff performed this task prior to the start of her shift.  Ahmed also assigned Plaintiff the task of monitoring infection control which task Plaintiff routinely discharged prior to 6 a.m.

81. Prior to Brasky being given the assignment of monitoring infection control, on information and belief, nurses were compensated an additional $200 per month for performing this task.

82. Brasky, though, never received this additional $200 per month for engaging in this activity.

83. Some of Plaintiff's pre-shift job duties included, but were not limited to: checking the charts of all patients from previous days to ensure all ophthalmologists, anesthesiologists, nurses and patients had signed all required surgical and medical forms; confirming patients' medical histories and operative reports summarizing procedures; setting up all computers in pre-op and post-op units; printing out EKG strips; and ensuring that the ventilation bag and all required items on the emergency "crash cart" were present and in working order.

84. From February 2016 until April 22, 2016, Plaintiff was required by Defendants to work 5-day weeks on 7 different occasions.

85. The decision by Defendants to make Plaintiff work 5 days a week on 7 different occasions was made after Plaintiff made her religious accommodation request with respect to Passover.

**Plaintiff is the Victim of Age Discrimination in the**
**Final Months of Plaintiff's Employment at the Surgi-Center**

86. Throughout the last year of Plaintiff's employment, Ahmed made negative comments about Plaintiff's age.

87. The rate at which Ahmed made these negative comments increased noticeably after Plaintiff's January 2016 religious accommodation request with respect to leaving early for Passover.

88. Specifically, on several occasions Ahmed would state to Plaintiff in front of her colleagues and the clinical staff "You're old," "You are the oldest here" and "You are old, you have been here the longest."

89. These comments by Ahmed to Plaintiff were stated in a hostile manner.

90. This pattern of negatively-expressed, age-related comments was hurtful to Plaintiff and made Plaintiff self-conscious about her age.

91. In addition, these age-discriminatory comments caused Plaintiff a loss in self-confidence, emotional distress and overall took a toll on Plaintiff's marriage.

**Plaintiff is the Victim of Religious and Race Discrimination**

92. Up until approximately the last year of Plaintiff's employment, Plaintiff routinely sought leave requests for Jewish holidays (including Passover, Yom Kippur and Rosh Hashanah).

93. These leave requests—up until the incident in question—were never challenged and always granted by Defendants.

94. In December 2015, Plaintiff asked Atmajaya when she could make the early leave request so as to observe Passover.  Atmajaya told Plaintiff that she could not make the request until the beginning of the New Year, because it would upset Ahmed.

95. Accordingly, on January 6, 2016, Brasky went to Atmajaya with a formal written leave request (the "Leave Request").

96. The Leave Request included leave requests for regular, secular vacation days as well as a request to leave work at 12:00 p.m. on April 22, 2016 so that she could observe Passover with her immediate family in Connecticut.

97. Upon receipt of the Leave Request, Atmajaya instructed Brasky not to place a date on the Leave Request which would reflect when Brasky was making the actual request to observe Passover.

98. Atmajaya promptly responded to the Leave Request.

99. Atmajaya told Plaintiff that Ahmed would approve her vacation days.

100. However, Atmajaya repeatedly told Brasky that Ahmed would "definitely not" approve her request to leave work early so as to observe the Passover holiday.

101. On January 14, 2016, Atmajaya gave back the Leave Request to Brasky.  Even though Brasky initially provided Atmajaya with the Leave Request on January 6, 2016, Atmajaya instructed Brasky to "date" the Leave Request January 14, 2016 despite Atmajaya knowing that this was inaccurate.

102. Brasky eventually received the Leave Request back.  Her request to leave at noon for Passover on April 22nd was "scribbled" out by Ahmed.  However, all of Brasky's other leave requests were approved.

103. In the intervening months, when Brasky inquired further to Atmajaya as to why Ahmed would not approve her request to leave work early so as to observe Passover with her loved ones, Atmajaya stated to Plaintiff that "you're not that religious anyway."

104. As reflected in the actual leave request, Ahmed only approved Plaintiff's vacation days but denied her request to leave work early for Passover.

105. On or about February 16, 2016, Ahmed and Atmajaya confronted Brasky without warning and demanded that she sign an undated document stating that she would not seek to leave on April 22, 2016 until all patients were admitted.  Under duress, Brasky signed the document.

106. Over the next few months, Plaintiff would frequently renew her request to Ahmed to be able to leave so that she could observe Passover with her family.  Plaintiff made these requests on a near daily basis to Ahmed.

107. Ahmed would respond to Plaintiff that Plaintiff is "not that religious" and that "because the holiday (Passover) doesn't start until sundown you [Brasky] don't need to leave early." On one occasion, Ahmed called Plaintiff a "fake Jew."

108. This included a tearful meeting approximately three weeks prior to April 22, 2016 when Brasky begged Ahmed to let her leave work on the day in question so as to observe Passover.

109. As Plaintiff reiterated her request to observe Passover, Ahmed became increasingly hostile to and dismissive of Plaintiff. For example, as previously noted, Ahmed began to make more hostile age comments to Plaintiff after Plaintiff made her religious accommodation request.

110. Furthermore, while Ahmed continued to deny Plaintiff's religious leave request, she simultaneously approved leave requests for other members of the clinical staff—including for the same week and the very day that Plaintiff sought leave to observe Passover with her immediate family.

111. Ahmed approved leave for other staff for both the week and day in question even though she claimed that at the time the nursing unit of the Surgi-Center was short-staffed.

112. On information and belief, all of the nurse employees that Ahmed granted leave requests for during the week and day in question were not Jewish.

113. For example, Ahmed approved Atmajaya's leave request for two personal days on April 18, 2016 and April 19, 2016.  Atmajaya sought two days leave in order to prepare for her daughter's two-year-old birthday party.

114. As a result of Ahmed granting Atmajaya's leave requests, Brasky was forced to work an additional 5-day work week.

115. On information and belief, Atmajaya's request was made subsequent to Plaintiff's January 2016 religious leave request.

116. When Plaintiff asked Ahmed about the approval of Atmajaya's leave requests for her [Atmajaya's] child's birthday party, Ahmed angrily told Plaintiff that Atmajaya's schedule was none of her business.

117. In addition, in March 2016, Plaintiff first learned that her co-worker staff nurse Vinnie Cheng, was scheduled to go on vacation on Friday, April 22, 2016.

118. At no time between December 2015 and March 2016 did either Atmajaya or Ahmed once inform Plaintiff that Cheng had been granted vacation time for April 22, 2016 or that such leave had been approved prior to Plaintiff's requests of December 2015 and January 6, 2016. On information and belief, Cheng's vacation request was made after Plaintiff's original January 14, 2016 request to leave work early so as to observe Passover.

119. Finally, Ahmed also permitted Atmajaya to take a personal day off on both Thursday, April 21, 2016 and Friday, April 22, 2016.

120. On information and belief, Atmajaya made this request only approximately 24 hours prior to the day that she requested to have off.

**April 22, 2016**

121. On the day in question, April 22, 2016, the day that Jews around the world were preparing to celebrate Passover, Plaintiff arrived to work prior to her scheduled shift time at approximately 4:15 a.m.

122. Even though Ahmed had approved Cheng and Atmajaya's leave requests for April 22, 2016, a full complement of 22 surgical cases were scheduled for that day.

123. While the surgical schedule for a particular day was established by the operating doctors, Ahmed would apprise the doctors of the availability and sufficiency of the nursing staff for that day. Ms. Ahmed did not notify the operating doctor that the Surgi-Center would have only two full time nurses and one per diem nurse available that day nor did she notify the doctor that Plaintiff needed to leave early for religious observance.

124. The schedule that Ahmed had helped to establish ensured that Ahmed could argue that Plaintiff would not be able to leave work early so as to observe Passover with her immediate family.

125. In fact, based upon the number of patients who had not yet been admitted at the Surgi-Center at approximately 12:00 p.m. and the pace of admissions to that point, the Surgi-Center would not have completed treating all of the patients until approximately 5:30 p.m.

126. While Plaintiff originally sought to leave at noon so as to observe Passover, in an effort to appease her supervisor and maintain employment, at approximately 12:00 p.m. she asked Ahmed if she could leave work at 2:30 p.m. so as to ensure sufficient time to arrive in Connecticut to be able to observe Passover with her family.[1]

127. In response to Plaintiff's request, Ahmed stated to Plaintiff in a taunting manner in front of the patients, "Well I'm telling you that if you leave before all the patients are admitted, you can't come back here to work."

128. At that point, Plaintiff was humiliated and considered herself fired by Ahmed as Ahmed was forcing her to choose between observing Passover and her employment. As Plaintiff was leaving the Surgi-Center, Ahmed stated mockingly (in a voice loud enough for Plaintiff to hear), "Good riddance."

---

[1] Even if Plaintiff left the Surgi-Center at "only" 2:30 p.m., this would still constitute approximately a ten-and-one-quarter-of-an-hour workday.

129. Plaintiff then observed Passover with her immediately family.

130. Neither Ahmed nor Atmajaya communicated with Plaintiff as to her work schedule for the week of April 25th and as of April 22nd the Surgi-Center terminated Plaintiff's e-mail account.

131. The unlawful termination by Defendants caused Plaintiff emotional distress and caused a strain on her marriage.

132. Plaintiff has not obtained a new position since her unlawful termination.

133. In addition to her lost wages, Plaintiff lost the opportunity to continue to make contributions to her 401k plan.

134. On information and belief, Ahmed was never subject to formal discipline by the Surgi-Center but along with Atmajaya, was merely required to attend "sensitivity training" classes.

**Ahmed Admits to Unlawful**
**Discriminatory Treatment Toward Brasky**

135.  Approximately ten days after Brasky's unlawful termination, Plaintiff's husband, Bruce Brasky, had a conversation with Bob Byrnes ("Byrnes"), the Surgi-Center's risk assessment director.  Bruce Brasky initiated this conversation to complain about the religious discrimination and unlawful firing suffered by his wife at the Surgi-Center.

136. In this conversation, Byrnes stated to Bruce Brasky that Ahmed had acknowledged to him that she had told Marion Brasky that she did not need to leave early on April 22nd because Passover began at sundown.

137. Byrnes also told Bruce Brasky that he had taken Ahmed "to task" for this statement and characterized it as "ridiculous" since the Seder was in Connecticut.  When Bruce Brasky told Byrnes that both Ahmed and Atmajaya had told Marion Brasky that she was not

religious, Byrnes told Bruce Brasky that he was unaware of this but that if it were true, "[it] would change everything."

138. Byrnes confronted both Ahmed and Atmajaya to see if they had in fact made statements to Marion Brasky stating to her that she was not religious.

139. On or about May 16, 2016, Byrnes called Marion Brasky and confirmed to her that both Ahmed and Atmajaya had in fact admitted that they had both stated to her that she was "not that religious."  Byrnes further admitted to Marion Brasky that both Ahmed and Atmajaya's behavior was unacceptable and that he had ordered both of them to undergo sensitivity training along with purportedly additional types of corrective measures. However, Byrnes did not identify any any additional corrective measures to be implemented against Ahmed or Atmajaya.

140. While the Surgi-Center required both Ahmed and Atmajaya to undergo sensitivity training, on information and belief, neither Ahmed nor Atmajaya were fired, demoted, suspended.  In fact, on information and belief, neither Ahmed nor Atmajaya were subject to any type of formal discipline.

141. No apology or effective remedy was offered to Plaintiff after her unlawful termination.

142. Overall, the actions (or lack thereof) of the Surgi-Center in response to the unlawful treatment of Brasky was woefully insufficient.

**FIRST CAUSE OF ACTION**
**Section 1981:  Race Discrimination Under Section 1981**
**(Against All Defendants)**

143. Plaintiff re-alleges and incorporates by reference each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

144. By the acts and practices described above, including creating a hostile work environment for Plaintiff, refusing to permit Plaintiff to observe Passover, and her unlawful termination, Defendants discriminated against Plaintiff in the terms and conditions of her employment in violation of Section 1981.

145. Defendants knew that their actions constituted unlawful discrimination and/or acted with malice or reckless disregard for Plaintiff's statutorily protected rights.

146. As a result of Defendants' discriminatory acts, Plaintiff has suffered and will continue to suffer economic damage, irreparable injury, emotional distress, reputational injury and other compensable damages.

**SECOND CAUSE OF ACTION**
**Section 1981:  Retaliation**
**(Against All Defendants)**

147. Plaintiff re-alleges and incorporates by reference each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

148. By the acts and practices described above, Defendants have retaliated against Plaintiff in the terms, conditions and privileges of her employment for her opposition to unlawful practices in violation of Section 1981.

149. Defendant acted with malice and/or reckless indifference to Plaintiff's statutorily protected rights.

150. As a result of Defendants' retaliatory acts, Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress, reputational injury and other compensable damages.

**THIRD CAUSE OF ACTION**
**New York State Human Rights Law**
**(Against all Defendants)**

151. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

152. Defendants intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of her age and religion, and retaliated against her in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq.

153. Defendants failed to provide Plaintiff with a reasonable accommodation of her religion.

154. Defendants' acts described herein constitute intentional discrimination against Plaintiff in that Defendants subjected Plaintiff to a severe and pervasive hostile work environment and ultimately terminated her employment on the basis of her religion.

155. Defendants' acts described herein constitute retaliation against Plaintiff for her requests for reasonable accommodation of her religion.

156. Defendants violated the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq.

157. As a result of Defendants' discriminatory acts, Plaintiff suffered lost wages, pain and suffering and severe emotional distress.

**FOURTH CAUSE OF ACTION**
**New York City Human Rights Law**
**(Against all Defendants)**

158. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

159. Defendants intentionally discriminated against Plaintiff in the terms and conditions of her employment on the basis of her religion, and retaliated against her in violation of New

York City Human Rights Law, the Administrative Code of the City of New York § 8-101 et seq.

160. Defendants failed to provide Plaintiff with a reasonable accommodation of her religion.

161. Defendants' acts described herein constitute intentional discrimination against Plaintiff in that Defendants subjected Plaintiff to a severe and pervasive hostile work environment and ultimately terminated her employment on the basis of her religion.

162. Defendants' acts described herein constitute retaliation against Plaintiff for her requests for reasonable accommodation of her religion.

163. Defendants violated the New York City Human Rights Law, the Administrative Code of the City of New York § 8-101 et seq.

164. As a result of Defendants' discriminatory acts, Plaintiff suffered lost wages, pain and suffering and severe emotional distress.

**FIFTH CAUSE OF ACTION**
**Discrimination Under the New York City Administrative Code**
**Supervisor Liability**
**(Against the Surgi-Center)**

165. Plaintiff re-alleges and incorporates by reference each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

166. New York City Administrative Code Title § 8-107(13) employer liability for discriminatory conduct by employee, agent or independent contractor states:

    a.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b.   An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        i.   the employee or agent exercised managerial or supervisory responsibility; or

20

     ii.    the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

     iii.    the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

167. Defendants Surgi-Center, Hay, Koplin, Koster, Jordan and Rosenblum knew or should have known of the discriminatory acts inflicted on Plaintiff by their agents, based on age, religion, and retaliation, and as a result of Defendants' discriminatory acts, Plaintiff suffered lost wages, pain and suffering and severe emotional distress.

**SIXTH CAUSE OF ACTION**
**Retaliation in Violation of NYSHRL**
**<u>(Against Ahmed)</u>**

168. Plaintiff re-alleges and incorporates by reference each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

169. Ahmed violated the NYSHRL by subjecting Plaintiff to unlawful retaliation for her complaints of and opposition to Ahmed's discriminatory and retaliatory practices enumerated above.

170. As a direct and proximate result of Ahmed's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

171. As a direct and proximate result of Ahmed's unlawful retaliatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment,

stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

**SEVENTH CAUSE OF ACTION**
**Retaliation in Violation of NYCHRL**
**(Against Ahmed)**

172. Plaintiff re-alleges and incorporates by reference each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

173. Ahmed violated the NYCHRL by subjecting Plaintiff to unlawful retaliation for her complaint of and opposition to Ahmed's discriminatory practices enumerated above.

174. As a direct and proximate result of Ahmed's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which she is entitled to an award of monetary damages and other relief.

175. As a direct and proximate result of Ahmed's unlawful retaliatory conduct in violation of the NYCHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

176. Ahmed's unlawful retaliatory conduct constitutes a willful and wanton violation of the NYCHRL, was outrageous and malicious, was intended to injure Plaintiff, and was committed with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**EIGHTH CAUSE OF ACTION**
**Failure to Pay Earned Wages in Violation of New York Labor Law**
**(Against the Surgi-Center, Hay, and Ahmed)**

177. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

178. At all relevant times, Plaintiff was an "employee" within the meaning of the New York Labor Law.  Similarly, at all relevant times, Defendants Surgi-Center, Hay and Ahmed were "employers" within the meaning of the New York Labor Law.

179. Defendants Surgi-Center, Hay and Ahmed failed to pay Plaintiff her earned wages for the periods of time and in the manner as set forth above.

180. Defendants Surgi-Center, Hay and Ahmed's failure to pay Plaintiff her earned wages was willful and not based on any good faith belief of compliance with New York Labor Law § 663, et seq.

181. As a result of the foregoing, Plaintiff has been denied wages required under New York Labor Law 663 *et seq.*, and is entitled to an award of unpaid wages in an amount to be determined at trial, plus liquidated damages, prejudgment interest and reasonable attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**Fair Labor Standards Act-Minimum Wages**
**(Against the Surgi-Center, Hay and Ahmed)**

182. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

183. Defendants Surgi-Center, Hay and Ahmed have engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Complaint.

23

184. At all times relevant, Plaintiff was employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. § 201 et seq., and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. § 203.  At all relevant times, the Surgi-Center, Hay and Ahmed have employed "employee[s]," including Plaintiff.

185. Defendants Surgi-Center, Hay and Ahmed were required to pay directly to Plaintiff the applicable federal minimum wage rate for all hours worked.

186. Defendants Surgi-Center, Hay and Ahmed failed to pay Plaintiff the minimum wages to which she was entitled under the FLSA.

187. Defendants Surgi-Center, Hay and Ahmed's unlawful conduct, as described in this Complaint, has been willful and intentional.  Defendants Surgi-Center, Hay and Ahmed were aware or should have been aware that the practices described in this Complaint were unlawful.  Defendants Surgi-Center, Hay and Ahmed have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

188. Because Defendants Surgi-Center, Hay and Ahmed's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 28 U.S.C. § 201  et seq.

189. As a result of Defendants Surgi-Center, Hay and Ahmed's willful violations of the FLSA, Plaintiff has suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and is entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 201 et seq.

### TENTH CAUSE OF ACTION
### New York Labor Law—Minimum Wages
### (Against the Surgi-Center, Hay and Ahmed)

190. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

191. Defendants the Surgi-Center, Hay and Ahmed have engaged in a widespread pattern, policy, and practice of violating the NYLL, as detailed in this Complaint.

192. At all times relevant, Plaintiff was an employee of Defendants the Surgi-Center, Hay, Ahmed and the Surgi-Center, Hay and Ahmed were employers of Plaintiff within the meaning of the NYLL § 650 et seq., and the supporting New York State Department of Labor Regulations.

193. At all times relevant, Plaintiff was covered by the NYLL.

194. The wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants the Surgi-Center, Hay and Ahmed, and protect Plaintiff.

195. Defendants the Surgi-Center, Hay and Ahmed failed to pay Plaintiff the minimum hourly wages to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

196. Through their knowing or intentional failure to pay minimum hourly wages to Plaintiff, Defendants the Surgi-Center, Hay and Ahmed have willfully violated the NYLL, Article 19, § 650 et seq., and the supporting New York State Department of Labor Regulations.

197. Due to Defendants the Surgi-Center, Hay and Ahmed's willful violations of the NYLL, Plaintiff is entitled to recover from Defendants her unpaid minimum wages, liquidated

damages as provided by the NYLL, reasonable attorneys' fees, costs and pre-judgment and post-judgment interest.

### ELEVENTH CAUSE OF ACTION
### New York Labor Law- Failure to Provide Wage Statements
### (Against the Surgi-Center, Hay and Ahmed)

198. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs.

199. Defendants willfully failed to supply Plaintiff with accurate statements of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

200. Through their knowing or intentional failure to provide Plaintiff with the wage statements required by the NYLL, Defendants willfully violated NYLL, Article 6, § 190 *et seq*., and the supporting New York State Department of Labor Relations regulations.

201. Due to Defendants' willful violations of NYLL, Article 6, § 195(3), Plaintiff is entitled to statutory penalties of one hundred dollars for each workweek before December 29, 2014 and two hundred and fifty dollars for each workweek starting December 29, 2014 that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that judgment be granted awarding Plaintiff:

A.      Unpaid wages pursuant to the NYLL and the supporting New York State Department of Labor Regulations, and an additional and equal amount as liquidated damages pursuant to the NYLL;

B.      Unpaid wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Penalties of fifty dollars for each workweek before December 29, 2014 and fifty dollars for each workday starting December 29, 2014 that Defendants failed to provide Plaintiff with a wage notice, or a total of five thousand dollars, as provided for by NYLL, Article 6, § 198;

D.      Penalties of one hundred dollars for each workweek before December 29, 2014 and two hundred and fifty dollars for each workweek starting December 29, 2014 that Defendants failed to provide Plaintiff with accurate wage statements, or a total of five thousand dollars as provided for by NYLL, Article 6, § 198;

E.      Declare the acts and practices complained of herein to be violations of Section 1981, the Executive Law and the City;

F.      Award Plaintiff damages to make her whole for all earnings she would have received but for Defendants' discriminatory treatment, including, but not limited to, wages, retirement benefits, health care coverage and other lost benefits including future lost wages and benefits;

G.      Award Plaintiff compensatory damages for mental anguish, emotional distress, humiliation and damage to reputation;

H.      Punitive damages;

I.      Prejudgment and post-judgment interest;

J.      Reasonable attorneys' fees, costs and expenses in the prosecution of this action;

K.      Declaring that Defendants engaged in unlawful employment practices prohibited by the New York City Administrative Code Title 8, et seq. and that the Defendants discriminated against Plaintiff on the basis of age, disability and religion, together with harassment on the basis of these aspects;

L.      Declaring that Defendants engaged in unlawful retaliation prohibited by the New York State Human Rights Law;

M.      Declaring that Defendants engaged in unlawful retaliation prohibited by the New York City Administrative Code Title 8, et seq.;

N.      Such other further legal and equitable relief as the Court deems just and proper to remedy the Defendants' unlawful employment practices.

Dated: November 7, 2016
         New York, New York

                         Respectfully submitted,

                         **THE LAW OFFICES OF JACOB ARONAUER**

                         */s/ Jacob Aronauer*
                         Jacob Aronauer
                         225 Broadway, Suite 307
                         New York, New York 10007
                         (212) 323-6980
                         jaronauer@aronauerlaw.com

                         *Attorney for Plaintiff*